## No. 7560.

THE STATE EX REL. J. J. ATKINSON VS. THE STATE AUDITOR.

32   89
,109   601

The Legislature may provide for the payment of a just debt of the State out of any surplus of the revenues of any particular year.

In the absence of proof to the contrary it must be presumed that the revenues of each year will be sufficient to meet each and every appropriation made by the Legislature payable out of those revenues.

An act of the Legislature appropriating a specific sum to reimburse moneys paid into the treasury through error, does not violate the 3d section of the constitutional amendment of 1874.

The two subjects "*debts*," and "*expenses*," are so germain, and connected, that a legislative provision for "a debt," may be constitutionally made under a title expressing provision for "expenses."

APPEAL from the Third District Court, parish of Orleans. *Monroe*, J.

*Breaux, Fenner & Hall* for relator and appellant.

*James C. Egan*, Assistant Attorney-General, for defendant and appellee.

Breaux, Fenner & Hall, for relator and appellant, contended:

First—That the officers of the State are without power to place a trust fund belonging to certain persons in the treasury to the credit of the general fund.

Second—That the Legislature is empowered to appropriate from the revenues of any year the money necessary to replace a trust fund erroneously paid into the treasury of the State.

J. C. Egan, Assistant Attorney-General, for defendant and appellee, contended:

First—That the word debt does not apply to the necessary and ordinary current expenses of government, and hence that money raised from taxes to pay such expenses cannot be applied to the payment of a debt.

Second—That the revenues of one year cannot be appropriated to pay an expense of any other year. Constitutional amendment of 1874, 'section 3.

Third—That an act which appropriates a sum in payment of a "debt of the State" under a title which provides only for the general "expenses" of the State is unconstitutional.

The opinion of the court was delivered by

SPENCER, J. This case was before us in April, 1879. See Opinion Book No. 51, p. 172, not reported. It now appears that the surplus proceeds of the property sold by the State for taxes were erroneously carried to the general fund in 1872, and have been, therefore, diverted from the pur-

poses contemplated by law. We held that the sum so remaining of proceeds of property sold for taxes was a trust fund, and that the law required it to be placed in the treasury to the credit of the owner's of the property.

In the general appropriation bill of 1879 there is an appropriation of $2000 "for reimbursement of moneys paid into the treasury through error." Relator now demands that the Auditor be compelled to issue a warrant for, and the Treasurer to pay, the sum of $1441 55, out of said appropriation, which it is admitted remains unexpended, except to amount of about eighty dollars.

The defense is, that the appropriation in the act of 1879 is unconstitutional:

First. Because by the 3d section of the amendments of 1874 to the constitution, "the revenues of each year derived from taxation upon real, personal, and mixed property, or from licenses, shall be devoted solely to the expenses of said year for which it shall be raised, excepting any surplus remaining, which shall be directed to sinking the public debt."

Second. Because the title of the act, to wit: "Making appropriations for the general expenses of State government for the year ending 31st December, 1879," does not cover the appropriation in question.

We agree with the Assistant Attorney-General that the sum due to and demanded by relator cannot be considered an expense of 1879. It is a debt of the State, however, of the most sacred character, growing out of the misuse of trust funds in 1872. It being a debt of the State, provision may be made for its payment out of any surplus of the revenues of 1879.

The Legislature of 1879 made its estimates of receipts and expenditures for that year, and levied taxes and made appropriations accordingly. In the absence of proof to the contrary, we must presume that the revenues will be sufficient to meet all the appropriations made against them, and therefore that after satisfying the expenses of 1879, there will remain a surplus sufficient to meet the appropriation of $2000 for reimbursing moneys paid by error into the treasury.

We cannot presume that the Legislature has transcended its constitutional power. We do not see, therefore, that the amendment of 1874 is shown to have been violated in this provision.

As regards the title of the act, we think that the subjects, "debts" and "expenses," are so germain, and connected, that provision for "a debt" may be made under a title expressing provision for "expenses." In common parlance there is, no doubt, a distinction in the meaning of the words "debts" and "expenses." The latter is usually applied to those current temporary obligations which are met by pay-

ment as they arise, while the former designates obligations of a more enduring kind. But they are kindred subjects, and the distinction between them is often very shadowy.

We think the relator is entitled to the relief sought, but without interest on the sum due.

It is therefore ordered, adjudged, and decreed that the judgment appealed from be annulled and reversed; and it is now ordered and decreed that the writ of mandamus prayed for be made peremptory, and that the Auditor of the State do issue, and the Treasurer pay, a warrant to relator for the sum of $1441 55, to be drawn against, and paid out of, the appropriation of $2000 made in general appropriation bill of 1879, for "reimbursement of moneys paid into the treasury through error." The costs to be paid by respondents.